IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

WASHINGTON GAS LIGHT COMPANY        :

   v.                               :   Civil Action No. DKC 08-0967

PRINCE GEORGE'S COUNTY               :
COUNCIL SITTING AS THE
DISTRICT COUNCIL, ET AL.             :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this action seeking declaratory and injunctive relief is the motion for summary judgment (Paper 40) filed by Plaintiff Washington Gas Light Company ("Washington Gas"). For the reasons that follow, Plaintiff's motion will be denied.

**I. Background**

The facts of this case are set forth in detail in the memorandum opinion previously issued on January 30, 2009. (Paper 27). Following a hearing on February 10, 2009, the court granted in part and denied in part Defendants' motions to dismiss all claims or abstain (Papers 6 and 23), and denied Plaintiff's motion for summary judgment. (Paper 12). During the hearing, Plaintiff indicated that it would file a second amended complaint, and it did so on February 24, 2009. (Paper 36). Specifically, Plaintiff requests a declaration that all local laws relating to the location and safety of the proposed

liquefied natural gas ("LNG") facility are preempted, and an injunction prohibiting Defendants from enforcing local law relating to location and safety.  Defendants filed an answer to the second amended complaint on April 1, 2009.  (Paper 39).  On April 27, 2009, Plaintiff filed a second motion for summary judgment.  (Paper 40).  On June 16, 2009, a second hearing was held regarding Plaintiff's motion for summary judgment.

Plaintiff alleges that federal question jurisdiction is proper under the Natural Gas Act of 1938 ("NGA"), 15 U.S.C. § 717 *et. seq.*, as well as the Natural Gas Pipeline Safety Act of 1968 ("PSA"), 49 U.S.C. § 60101 *et. seq.*

The following new allegations in Plaintiff's second amended complaint are relevant to the court's analysis:

> 9. . . . The NGA applies to Washington Gas because Washington Gas is a natural gas company engaged in the transportation of natural gas in interstate commerce.
>
> 10. The Federal Energy Regulatory Commission ("FERC") has designated a service area for Washington Gas under 15 U.S.C.S. § 717f(f). As a result, the Maryland Public Service Commission ("PSC") has jurisdiction over the expansion or modification of Washington Gas' facilities.
>
> 11. FERC has also granted Washington Gas a blanket certificate, which allows Washington Gas to engage in the sale or transportation of natural gas that is subject to the Commission's jurisdiction under the Natural Gas Act to the same extent that and in the

> same manner that intrastate pipelines are authorized to engage in such activities.
>
> . . .
>
> 18. Washington Gas is an interstate pipeline facility because it is a gas pipeline facility used to transport gas and is subject to the jurisdiction of FERC. 49 U.S.C. § 60101(a)(6).

(Paper 36).

Plaintiff asserts that it is entitled to summary judgment because: (1) the PSA expressly preempts all state and local safety requirements relating to LNG facilities; (2) the NGA and PSA impliedly preempt the Prince George's County special exception and other code requirements relating to interstate facilities; and (3) federal law preempts by conflict the Prince George's County special exception and other code requirements. Plaintiff further asserts that because Washington Gas is subject to the jurisdiction of the FERC under the NGA, the express preemption provision of the PSA is applicable.

## II. Motion for Summary Judgment

### A. Standard of Review

It is well established that a motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby,*

3

*Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008).  In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate.  *Anderson*, 477 U.S. at 250; *JKC Holding Co. LLC v. Washington Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).  The moving party bears the burden of showing that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c); *Catawba Indian Tribe of S.C. v. South Carolina*, 978 F.2d 1334, 1339 (4th Cir. 1992), *cert. denied*, 507 U.S. 972 (1993).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion.  *United States v. Diebold*, 369 U.S. 654, 655 (1962); *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir. 1985).  A party who bears the burden of proof on a particular claim must factually support each element of his or her claim.  "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial."  *Celotex Corp.*, 477 U.S. at 323.  Thus, on those

4

issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial. *See Anderson*, 477 U.S. at 254; *Celotex Corp.*, 477 U.S. at 324. However, "[a] mere scintilla of evidence in support of the nonmovant's position will not defeat a motion for summary judgment." *Detrick v. Panalpina, Inc.*, 108 F.3d 529, 536 (4th Cir. 1997), *cert. denied*, 522 U.S. 810 (1997). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

**B.   Analysis**

**1.   Natural Gas Act**

As a threshold matter, the court must determine whether the proposed Chillum facility is "subject to" FERC jurisdiction under the NGA. Statutory interpretation principles direct the court to consider, first, the plain language of the statute. If there is no ambiguity, then no resort to extrinsic aids is appropriate. A court must harmonize all portions of a statute,

and not read any single provision out of context. "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which the language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)(citing *Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 477 (1992)). It is a "cardinal principle of statutory construction," however, that part of a statute should not be read as "superfluous, void, or insignificant," *TRW, Inc. v. Andrews*, 534 U.S. 19, 31 (2001), and that "repeals by implication are not favored," *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 468 (1982)(internal quotations omitted). Instead, "whenever possible, statutes should be read consistently." *Kremer*, 456 U.S. at 468.

"Section 1(b) of the NGA, 15 U.S.C. § 717(b), . . . expressly carves out a regulatory role for the States . . . providing that the States retain jurisdiction over intrastate transportation, local distribution, and distribution facilities, and over 'the production or gathering of natural gas.'" *Northwest Cent. Pipeline Corp. v. State Corp. Comm'n of Kansas*, 489 U.S. 493, 506 (1989)(quoting § 717(b)). Section 717(b) defines the transactions covered under the NGA:

6

> The provisions of this chapter shall apply to the transportation of natural gas in interstate commerce, to the sale in interstate commerce of natural gas for resale for ultimate public consumption for domestic, commercial, industrial, or any other use, and to natural-gas companies engaged in such transportation or sale, and to the importation or exportation of natural gas in foreign commerce and to persons engaged in such importation or exportation, *but shall not apply to any other transportation or sale of natural gas or to the local distribution of natural gas or to the facilities used for such distribution or to the production or gathering of natural gas*.

15 U.S.C. § 717(b)(emphasis added). Section 717(b) gives FERC "plenary jurisdiction over three areas, and three areas only: (1) the 'transportation of natural gas in interstate commerce,' (2) the 'sale in interstate commerce of natural gas for resale,' and (3) 'natural-gas companies engaged in such transportation or sale.'" *Cascade Natural Gas Corp. v. F.E.R.C.*, 955 F.2d 1412, 1416 (10th Cir. 1992)(quoting 15 U.S.C. § 717(b); *Panhandle Pipe Line Co. v. Public Serv. Comm'n of Ind.*, 332 U.S. 507, 516 (1947)).

Section 717f(c) governs the construction, extension, or abandonment of facilities, and provides:

> No natural-gas company or person which will be a natural-gas company upon completion of any proposed construction or extension shall engage in the transportation or sale of natural gas, *subject to the jurisdiction of*

7

> *the Commission*, or undertake the construction or extension of any facilities therefor, or acquire or operate any such facilities or extensions thereof, unless there is in force with respect to such natural-gas company a certificate of public convenience and necessity issued by the Commission authorizing such acts or operations . . .

15 U.S.C.A. § 717f(c)(1)(A)(emphasis added).

Plaintiff alleges that "[t]he Federal Energy Regulatory Commission ("FERC") has designated a service area for Washington Gas under 15 U.S.C.S. § 717f(f). As a result, the Maryland Public Service Commission ("PSC") has jurisdiction over the expansion or modification of Washington Gas' facilities." (Paper 36, ¶ 10). Plaintiff argues that FERC considers those companies with a service area designation, *i.e.*, Washington Gas, to be natural gas companies subject to the NGA. Plaintiff asserts that in *Washington Gas Light Co.*, 39 FERC ¶ 61119 (1987), FERC explained:

> Although WGL has no long distance transmission facilities and makes no sales for resale, it nevertheless comes within the definition of a "natural-gas company" in section 2(6) of the NGA due to its transportation of the natural gas which it receives from its suppliers across the boundaries of the three states in which it serves. Consequently, such transportation is subject to the Commission's jurisdiction. While we appreciate the desires of the state commissions that no unnecessary impediments be introduced into their regulation of WGL's

8

> retail operations, the provisions of the NGA clearly provide for Commission regulation of companies like WGL. The section 7(f) service area designation simply allows WGL to modify its facilities which are *subject to our jurisdiction* as needed without the necessity for receiving individual authorization and has no effect on the scope of the Commission's jurisdiction or the exercise thereof. WGL's transportation of customer-owned gas, as proposed, would constitute the transportation of natural gas in interstate commerce and does not qualify as a local distribution activity.

*Id.* at 61470 (internal footnotes omitted)(emphasis added). Plaintiff insists that FERC made clear that the law exempting Washington Gas from the need to obtain FERC approval for expansions of its facilities did not affect FERC's jurisdiction under the NGA because Washington Gas transports natural gas across state lines.

Defendants respond that the NGA was amended in 1988 specifically to overturn FERC's conclusion in *Washington Gas Light Co.*, 39 FERC ¶ 61119. In 1988, the NGA was amended to add § 717f(f) which provides:

> (f) Determination of service area; jurisdiction of transportation to ultimate consumers
>
> (1) The Commission, after a hearing had upon its own motion or upon application, may determine the service area to which each authorization under this section is to be limited. Within such service area as determined by the Commission a natural-gas

9

> company may enlarge or extend its facilities for the purpose of supplying increased market demands in such service area without further authorization; and
>
> (2) If the Commission has determined a service area pursuant to this subsection, transportation to ultimate consumers in such service area by the holder of such service area determination, even if across State lines, shall be subject to the exclusive jurisdiction of the State commission in the State in which the gas is consumed.  This section shall not apply to the transportation of natural gas to another natural gas company.

15 U.S.C.A. § 717f(f)(1)-(2).

Plaintiff's reliance on a FERC decision that predates the 1988 amendment to the NGA is misplaced.  In 1988, Congress passed the Uniform Regulatory Jurisdiction Act, Pub. L. No. 100-474, 102 Stat-230, adding section f(f)(2).  The 1988 amendment makes clear that within a § 7(f) service area, FERC's jurisdiction excludes transportation to ultimate consumers in the service area, "*even if across state lines*."  As explained in the legislative history of the 1988 Amendment:

> The Natural Gas Act requires the Federal Energy Regulatory Commission ("FERC") to regulate natural gas companies that provide service in interstate commerce.  Companies that sell gas and provide appurtenant service to retail customers are local distribution companies, and generally are regulated by individual state public utility commissions.

10

> In a handful of instances, there are local distribution companies that have customers in services areas that straddle state lines. *Because they provide service in more than one state, they ordinarily would be regulated by FERC. However, section 7(f) of the Natural Gas Act allows FERC to make a determination that such a company is performing a local distribution function.* If it makes such a determination, the natural gas company may "enlarge or extend its facilities" in that service area for the purpose of supplying increased market demands in the service area without further authorization by FERC. Washington Gas Light Company, which serves the D.C. metropolitan area, is an example of a 7(f) company.
>
> . . .
>
> The provisions of this Act *do not* affect State jurisdiction over existing or new facilities constructed in the 7(f)(1) service area.

S. Rep. No. 100-486, at 2 (1988), *as reprinted in* 1988 U.S.C.C.A.N. 2692, 2692-94.

FERC's issuance of the blanket certificate resulted in the designation of a service area that, although crossing state lines, treats Washington Gas as a local distribution company. As noted above, the NGA is not applicable to local distribution companies under § 717(b). Plaintiff asserts that § 717f(f)(1), read in isolation, supports the conclusion that Washington Gas may expand its facilities without further authorization from FERC or state authorities. However, Plaintiff fails to

11

recognize that there is an "*and*" connecting §§ 717f(f)(1) and f(f)(2). Section f(f)(2) does not, as Plaintiff argues, create a regulatory vacuum in which Plaintiff may expand its facilities with no oversight. While Plaintiff may have been, in the past, subject to the jurisdiction of FERC under the NGA, following the designation of the service area and issuance of the blanket certificate, FERC delegated regulation of Washington Gas to local authorities. At present, Plaintiff is not "subject to" the jurisdiction of the Commission under the NGA. Rather, pursuant to § 717f(f)(1)-(2), Plaintiff is subject to the "exclusive jurisdiction" of the state in which the gas is consumed.

   **2.   Pipeline Safety Act**

49 U.S.C. § 60101(a)(9) defines an *intra*state gas pipeline facility as "a gas pipeline facility and transportation of gas within a State not subject to the jurisdiction of the Commission under the Natural Gas Act . . . ." As explained above, Plaintiff is no longer subject to the jurisdiction of FERC under the NGA. Thus, under the PSA, Plaintiff is an *intra*state facility.

Plaintiff alleges that under 49 U.S.C. § 60102(a)(2) the United States Secretary of Transportation (the "Secretary")

12

prescribes the safety standards for pipeline facilities. (Paper 36 ¶ 13). Plaintiff insists that as a result of the express preemption provision contained in 49 U.S.C. § 60104(c), Prince George's County may not prohibit the location for the Chillum facility through its zoning overlay ordinance. Plaintiff argues that the Prince George's County local zoning law is preempted.

Defendants respond that the PSA neither authorizes the U.S. Department of Transportation ("USDOT") to prescribe the location or routing of a pipeline facility, nor establishes "maximum" standards, nor speaks to the non-safety aspects of site selection. Defendants maintain that the PSA only authorizes USDOT to provide minimum standards for safety but does not authorize USDOT to establish standards that would prevent Maryland local governments from imposing additional constraints on location through zoning.

Preemption of state or local laws occurs by operation of the Supremacy Clause of the United States Constitution when (1) Congress expressly defines the extent to which federal law preempts state law; (2) state law regulates conduct in a field that Congress intended the federal government to occupy exclusively; (3) it is impossible to comply with both state and federal requirements; or (4) the state law poses an obstacle to

13

the accomplishment and execution of congressional purposes. *Major v. CSX Transp.*, 278 F.Supp.2d 597, 607 (D.Md. 2003); U.S. Const. Art. 6, cl. 2.

The preemption provision under the PSA provides:

> A State authority that has submitted a current certification under section 60105(a) of this title may adopt additional or more stringent safety standards for *intrastate* pipeline facilities and *intrastate* pipeline transportation only if those standards are compatible with the minimum standards prescribed under this chapter. A State authority may not adopt or continue in force safety standards for *interstate* pipeline facilities or *interstate* pipeline transportation.

49 U.S.C. § 60104(c)(emphasis added). With regard to intrastate pipeline facilities or intrastate pipeline transportation, the PSA provides:

> [T]he Secretary of Transportation *may not* prescribe or enforce safety standards and practices for an intrastate pipeline facility or intrastate pipeline transportation to the extent that the safety standards and practices are regulated by a State authority (including a municipality if the standards and practices apply to intrastate gas pipeline transportation) that submits to the Secretary annually a certification for the facilities and transportation that complies with subsections (b) and (c) of this section.

49 U.S.C. § 60105(a)(emphasis added).

14

As previously explained in the court's January 30, 2009 memorandum opinion, a finding that the Chillum facility is *intra*state does not end the preemption inquiry.

> Some cases assume that state and local regulation regarding safety of an intrastate facility is generally preempted, expressly or impliedly. *See, e.g.*, *Olympic Pipe Line Co. v. City of Seattle*, 437 F.3d 873 (9th Cir. 2006); *S. Union Co. v. Lynch*, 321 F.Supp.2d 328 (D.R.I. 2004). But there are circumstances under which state regulations may not be preempted by the PSA. "The []PSA recognizes that states have a legitimate function to perform with respect to regulation of intrastate pipeline safety. It provides, however, a minimum standard for safety—a floor above which the state may add additional or more stringent requirements that can coexist with the federal framework." *Lynch*, 321 F.Supp.2d at 340-41. Indeed, §§ 60104(c) and 60105(a) specifically provide that a state authority may adopt more stringent safety standards for an intrastate facility after it has received certification to promulgate regulations. Ultimately, as stated by the Ninth Circuit:
>
>> Thus, a state authority may regulate intrastate pipelines and impose safety requirements in addition to the federal standards only if: 1) the state authority applies and is approved by the [Department of Transportation ("DOT")] through an annual certification process pursuant to § 60105; and 2) the standards are compatible with the federal standards. *Id.* § 60104(c). Alternatively, a state authority may receive authorization from the DOT to regulate an intrastate pipeline under a pipeline safety

15

>     agreement pursuant to § 60106(a) or
>     through the designation of an agent
>     under § 60117(c).

*Olympic Pipe Line Co.*, 437 F.3d at 878-79.

(Paper 27, at 36-37).

Plaintiff's second amended complaint, which is premised on the assertion that it is an interstate pipeline facility, fails to allege any facts regarding a specific provision of Prince George's county law that it claims is preempted, let alone allege any facts related to the scope of preemption between the PSA, Maryland law, and local law.  Plaintiff has failed to demonstrate that there no genuine issues of material fact exist entitling it to judgment as a matter of law.

## III. Conclusion

For the foregoing reasons, Plaintiff's motion for summary judgment will be denied.  A separate Order will follow.

```
        _____/s/_____
        DEBORAH K. CHASANOW
        United States District Judge
```