IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|   |   |   |
|---|---|---|
| WASHINGTON GAS LIGHT COMPANY | : | |
| | : | |
| v. | : | Civil Action No. DKC 08-0967 |
| | : | |
| THE PRINCE GEORGE'S COUNTY COUNCIL SITTING AS THE DISTRICT COUNCIL, et al. | : | |
| | : | |

**MEMORANDUM OPINION**

Presently pending and ready for review in this action seeking declaratory and injunctive relief are the motion for leave to file a third amended complaint filed by Plaintiff Washington Gas Light Company (ECF No. 63) and the motion for summary judgment filed by Defendants Prince George's County Council, sitting as the District Council, and Prince George's County, Maryland (ECF No. 65). The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, Plaintiff's motion for leave to amend will be granted in part and denied in part, and Defendants' motion will be denied as moot.

## I.  Background

Plaintiff Washington Gas, a District of Columbia and Virginia Corporation, operates a natural gas substation at 2130

Chillum Road in Chillum, Maryland. The site, which was approved for natural gas storage and compression in 1933, is the intersection of several high-pressure natural gas transmission pipelines and several low pressure local distribution pipelines owned and operated by Washington Gas to provide service to customers in Maryland, Virginia, and the District of Columbia. In 2004, Washington Gas sought to construct a liquefied natural gas storage tank at the Chillum site to meet a projected increase in customer demand.

On August 26, 2004, Washington Gas submitted mandatory referral documents to the County, including a description of the proposed new facility and a concept plan. The Office of the Zoning Hearing Examiner for Prince George's County conducted seven hearings between December 2005 and May 2006, and on August 24, 2006, denied Washington Gas's proposal. Washington Gas appealed the decision to the District Council, which issued an Order of Denial. Washington Gas thereafter filed for judicial review in the Circuit Court for Prince George's County. By order dated October 17, 2007, the circuit court determined that the issues were not ripe for review, that Washington Gas failed to exhaust administrative remedies, and that the case should be remanded to the District Council.

Plaintiff's initial complaint was filed in this court on April 16, 2008, asserting claims against Prince George's County Council Sitting as the District Council (ECF No. 1) and was amended with consent shortly thereafter to add Prince George's County, Maryland as a Defendant (ECF No. 14). The first amended complaint asserted three counts: (1) seeking a declaratory judgment that federal and state law preempt local law with respect to LNG facilities (ECF No. 14 ¶¶ 30-35), (2) seeking a declaratory judgment that the local non-binding mandatory referral process is the full extent of local involvement with respect to the proposed LNG storage facilities (*id.* ¶¶ 36-39), and (3) seeking an injunction to prevent Defendants from enforcing preempted local laws. (*Id.* ¶¶ 40-41). Defendants filed motions to dismiss (ECF Nos. 6 and 23) and Plaintiff filed a motion for summary judgment on all counts. (ECF No. 12). After a hearing on the issues, the court denied Plaintiff's motion for summary judgment and granted the motion to dismiss in part. (ECF No. 32). Specifically the court granted the motion to dismiss count II relating to the local mandatory referral process on abstention grounds.

Plaintiff subsequently filed a second amended complaint and another motion for summary judgment. (ECF Nos. 36 and 40). The second amended complaint, which asserted that it was an interstate facility, included one count seeking a declaratory

judgment that all local laws relating to the safety and location of the proposed LNG storage facility were preempted by federal law and an injunction against their enforcement. (ECF No. 36, at 28-33). In the opinion ruling on Plaintiff's motion, this court determined that Plaintiff is not subject to the jurisdiction of the Federal Energy Regulatory Commission ("Commission") under the Natural Gas Act ("NGA"), instead it is subject to the exclusive jurisdiction of the state in which its gas is consumed, in this case Maryland. (ECF No. 60, at 12). In addition, this court determined that under the Pipeline Safety Act ("PSA") Plaintiff is an intrastate facility making express preemption, as set forth in 49 U.S.C. § 60104(c), inapplicable. (*Id.*).

The opinion recognized that this determination did not necessarily end the preemption inquiry but noted that because Plaintiff's second amended complaint was premised on the incorrect assertion that Plaintiff's facility was an interstate one to which express preemption applied, it had failed to allege any facts identifying specific provisions of Prince George's county law that it claimed were preempted, or any facts relating to the scope of preemption between the PSA, Maryland law and local law. (*Id.* at 16).

During the course of these proceedings, plaintiff has variously claimed to be both an interstate and an intrastate

entity. At this point, it seeks to file a third amended complaint, restating some rejected theories, attempting to assert additional facts to shore up other theories, and to assert an entirely new theory based on the dormant commerce clause. Plaintiff argues that the primary purpose of the TAC is to make additional allegations in the areas identified as absent from the SAC in the court's March 26, 2010 opinion. (ECF No. 63-1, at 3). Plaintiff's amended complaint does not omit its prior claims premised on the theory that its facility is an interstate one, however, but it does plead "[in] the alternative, Washington Gas is an intrastate pipeline facility within the meaning of 49 U.S.C. § 60101 (a)(9)." (*See, e.g.,* ECF No. 63-5 ¶ 18).[1] The TAC also includes sections detailing safety standards promulgated in the Code of Maryland Regulations ("COMAR") that incorporate the federal regulations for LNG facilities, (*id.* ¶¶ 22-28), and the local Prince George's County laws and regulations with which its facility cannot comply. (*Id.* ¶¶ 34-39). The TAC also includes a new count II seeking a declaratory judgment and injunctive relief premised on the theory that the Prince George's County laws violate the dormant Commerce Clause. (*Id.* ¶¶ 50-56).

---

[1] Alternative pleading, either in a single count or in separate ones, is permitted by Fed.R.Civ.P. 8(d)(2).

Defendants oppose Plaintiff's motion for leave to amend. (ECF No. 64). They have also filed a motion for summary judgment on Plaintiff's second amended complaint, in the event that the court denies Plaintiff's motion for leave to amend. (ECF No. 65).

## II. Motion For Leave To File Third Amended Complaint

### A. Standard of Review

Under Federal Rule of Civil Procedure 15(a)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Denial of leave to amend should occur "only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986). However, a motion to amend should be made as soon as the necessity for altering the pleading becomes apparent. *Deasy v. Hill*, 833 F.2d 38, 40 (4th Cir. 1987).

The standard for futility is the same as a motion to dismiss under Fed.R.Civ.P. 12(b)(6). *See Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995)(amendment is futile if the amended claim would fail to survive motion to dismiss). "Leave to amend should be denied on the ground of futility only when the proposed amendment is clearly insufficient or frivolous

on its face." *Cappetta v. GC Servs. Ltd. P'ship*, No. 3:08CV288, 2009 WL 482474 at *4 (E.D.Va. Feb. 24, 2009)(citing *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir.1986); *Oroweat Foods Co.*, 785 F.2d at 510).

**B.   Analysis**

Plaintiff contends that no basis for denying its request for leave to amend is present here.  Plaintiff argues that there is no potential for prejudice or evidence of bad faith from its request because the TAC merely adds theories of recovery to the facts already pled and discovery has not yet occurred. (ECF No. 63-1, at 5).  Plaintiff also argues that its request is not futile because the TAC clearly states a claim upon which relief can be granted.

Defendants oppose the motion and argue that leave to amend should be denied.  Defendants argue that in the TAC Plaintiff seeks to re-allege preemption claims that this court has already rejected as a matter of law or which Plaintiff has abandoned. Defendants also argue that the claims are futile.  In addition, Defendants argue that the new dormant Commerce Clause claim is unexplained, fails to satisfy the pleading requirements in Fed.R.Civ.P. 8, and would be futile.  (ECF No. 64, at 4-5).

### 1. Allegations Asserting Federal Preemption of Local Laws Pertaining to Interstate LNG Facilities

Defendants argue that leave to amend should be denied with respect to all of Plaintiff's allegations asserting that the facility is an interstate one because the court has already rejected this argument and declared that the facility is intrastate.

Defendants rely on the law of the case doctrine; a doctrine which provides that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Columbus-America Discovery Grp. v. Atl. Mut. Ins. Co.*, 203 F.3d 291, 304 (4th Cir. 2000)(quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)); *see also JH ex rel. JD v. Henrico Cnty. Sch. Bd.*, 395 F.3d 185, 197, n. 9 (4th Cir. 2005)(citation omitted). The doctrine is discretionary and not jurisdictionally required. *See Columbus-America*, 203 F.3d at 304 (citing *Smith v. Bounds*, 813 F.2d 1299, 1304 (4th Cir.1987)). As noted by Wright & Miller, "law-of-the-case principles . . . are a matter of practice that rests on good sense and the desire to protect both the court and parties against the burdens of repeated reargument by indefatigable

diehards."    18B Wright & Miller, Federal Practice & Procedure § 4478 (2d ed. 2010).[2]

This court's March 26, 2010 opinion found that Plaintiff's facility is an intrastate one.   (ECF No. 60, at 12).   At that time the court was ruling on and denied Plaintiff's motion for summary judgment.   The court did not formally dismiss the second amended complaint premised on Plaintiff's status as an interstate facility.   Nevertheless Defendants contend that the prior opinion ruled on the viability of this theory and that Plaintiff need not re-allege it to preserve its right to appeal, citing *Young v. City of Mount Ranier*, 238 F.3d 567, 572-73 (4th Cir. 2001).   But *Young* stated only "if a claim is dismissed without leave to amend, the plaintiff does not forfeit the right to challenge the dismissal on appeal simply by filing an amended complaint that does not re-allege the dismissed claim."   *Id.* at 572.   The Fourth Circuit specifically noted that it was not considering "whether claims dismissed with leave to amend must

_____

[2] Plaintiff's counterargument that the law of the case only applies to decisions from the court of appeals is a reference to the mandate rule.   "The mandate rule is . . . a specific application of [the law of the case] doctrine that forecloses relitigation of issues expressly or impliedly decided by the appellate court."   *Walker v. Kelly*, 589 F.3d 127, 137 (4th Cir. 2009)(internal quotations omitted).   Where the law of the case is invoked with respect to prior district court rulings, prior to a final judgment, the court has significantly more discretion and is not bound by its own prior rulings to the same extent it would be bound to the prior ruling of a higher court.

be re-alleged in an amended complaint in order to preserve the right to appeal the dismissal." *Id.* at n.4. It follows that the ruling would also not apply to situations where claims are not dismissed at all. And as Plaintiff notes, *Young* also reasserted the general rule that "an amended pleading supersedes the original pleading, rendering the original pleading of no effect." *Id.* at 573. If an amended complaint omits claims from the original complaint, the plaintiff thereby waives or abandons the original claims. *Id.*

Plaintiff's inclusion of preemption claims premised on its status as an interstate facility is not in bad faith. The court has not formally dismissed any claims premised on this theory and it was reasonable for Plaintiff to reassert them in order to preserve them for appeal.

### 2. Allegations Asserting State Law Preemption

Defendants next argue that the motion for leave should be denied to the extent that Plaintiff seeks to resurrect its previously abandoned, and futile, state law preemption claim. Defendants argue that this theory was abandoned by Plaintiff at the February 10, 2009 oral hearing on Defendants' motion to dismiss Plaintiff's first amended complaint. Defendants' theory is as follows: Plaintiff's first amended complaint asserted two theories of state law preemption. State law preemption was alleged in count I where, in addition to its federal preemption

law allegations, Plaintiff argued that the Maryland Public Utility Companies statute preempted the zoning laws. State law preemption was also the sole basis for count II where Plaintiff alleged that as a matter of state land use planning law, a non-binding referral process preempted county zoning. In the January 30, 2009 memorandum opinion in advance of the hearing, this court indicated that count II would be dismissed pursuant to the *Burford* abstention doctrine and that Plaintiff did not appear to have stated a state law cause of action for either count I or III, which effectively comprised a single count for declaratory and injunctive relief. At the hearing, Plaintiff did not contest the latter finding, did not proffer a state law cause of action for count I despite having alleged diversity jurisdiction, and stated with respect to count I "this is federal law." (ECF No. 64, at 11). Plaintiff's second amended complaint did not include any state law preemption allegations, but now Plaintiff argues in its motion for leave that most of the legal theories in the third amended complaint were previously plead and identifies only one additional legal theory—the dormant Commerce Clause claim. Defendants argue that the only way to reconcile Plaintiff's statements that it raised a state preemption claim at the outset of the case with its representation at the hearing that counts one and three raised only federal law issues "is to conclude that [Plaintiff]

abandoned its state law preemption claim at the February 10, 2009 oral argument, rather than defend that claim against the County's motion to dismiss." (*Id.*).

Defendants contend that it would be prejudicial to allow Plaintiff to re-allege this abandoned claim now because doing so would force Defendants to file another motion to dismiss a claim they already attempted to dismiss from the case and that Plaintiff's behavior demonstrates bad faith or dilatory motives. (*Id.* at 12-13). Defendants also argue that these amendments are futile because they raise difficult issues of state law that the court should refrain from considering and because it is clear that state law does not preempt the county zoning regulations. (*Id.* at 13).

Plaintiff responds first and foremost that it has not abandoned or waived its state law preemption claims. Plaintiff contends that it did not intend to waive these claims at the prior hearing and also argues that as a matter of law the omission of claims from an amended complaint can only be deemed abandonment or waiver in the context of assessing whether claims were preserved for appeal. (ECF No. 69, at 6). Plaintiff contends that it should be permitted to add claims freely until there is a final judgment expressly dismissing them. (*Id.* at 7). Plaintiff also argues that Defendants' prior motion to dismiss did not address the state law preemption claims and it

would not be prejudicial to allow the claims to be re-alleged now. (*Id.* at 7-8). Finally Plaintiff contends that its state law preemption arguments are not futile. (*Id.* at 9-10).

Beginning with the waiver argument, the court is not persuaded that Plaintiff affirmatively abandoned or waived its state law preemption claims. And even if Plaintiff had clearly waived its state law preemption arguments, it would be permissible for Plaintiff to seek leave of the court to re-allege them in a revised complaint. Additionally, Defendants' prior motion to dismiss did not address Plaintiff's theory of state law preemption in detail and it was not a focus of either parties' or the court's analysis outside the context of claim regarding the mandatory referral process in original count II.

Whether the claims are futile is a more complicated question. Defendants argue that the claims are futile for two reasons: (1) the state law preemption claim raises a difficult and unresolved issue of state law from which this court should abstain; and (2) it is clear that state law does not preempt the county's land use regulations. (ECF No. 64, at 13).

It is not inappropriate for this court to consider whether the local regulations are preempted by Maryland state law. As a general rule, "federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716, (1996).

Abstention doctrines are "extraordinary and narrow exception[s]" to that duty. *Id.* at 716, 728. One such doctrine was set forth in *Burford v. Sun Oil Co.*, 319 U.S. 315, 331-32 (1943), where the Supreme Court recognized that courts may abstain when the availability of an alternative, federal forum threatened to frustrate the purpose of a state's complex administrative system. *See also Quackenbush*, 517 U.S. at 725; *Ala. Pub. Serv. Comm'n v. S. Ry. Co.*, 341 U.S. 341, (1951). This court declined to exercise jurisdiction over count II of Plaintiff's first amended complaint pursuant to *Burford*, but there are key differences between the state law issues presented in that count and those presented in count I of the TAC.

As stated in the January 30, 2009 opinion, a federal court should abstain under the *Burford* doctrine:

> when federal adjudication would unduly intrude upon complex state administrative processes because either: (1) there are difficult questions of state law . . . whose importance transcends the result in the case then at bar, or (2) federal review would disrupt state efforts to establish a coherent policy with respect to a matter of substantial public concern.

(ECF No. 27, at 15-16)(quoting *Martin v. Stewart*, 499 F.3d 360, 364 (4th Cir. 2007)(internal marks omitted), *cert. denied*, 554 U.S. 918 (2008)). Resolution of count II of Plaintiff's first amended complaint would have required this court to interpret the mandatory referral provision of the Regional District Act,

Article 28 of the Maryland Code, and to determine whether that provision applied to private utility companies. (ECF No. 27, at 18-19). There was also a great risk that federal interpretation of that provision would create a system of parallel oversight of issues related to mandatory referral the state zoning context. (*Id.*).

In contrast, the state law issue presented in count I of the TAC is one that federal courts are well-equipped to resolve. Federal courts have ruled on the question of state law preemption in the past. *See, e.g., Bell Atlantic-Maryland v. Prince George's County*, 155 F.Supp.2d 465, 478 (D.Md. 2001)(holding that county ordinance was preempted by Maryland's public utilities law).[3] In addition the analysis employed in Maryland to determine whether state law preempts local law is strikingly similar to the analysis for federal preemption of state law. *H&R Block E. Enters., Inc. v. Raskin*, 591 F.3d 718

---

[3] In fact it may be necessary to consider state law preemption first, to avoid deciding a constitutional question of law not essential to the disposition of the case. *See Bell Atl. Md. Inc. v. Prince George's Cnty. Md.* 212 F.3d 863, 865 (overruling district court decision that county regulation was preempted by the Federal Telecommunications Act where four alleged state law bases for striking the regulation had not been considered). The Fourth Circuit explained that "by deciding the constitutional question of preemption in advance of considering the state law questions upon which the case might have been disposed of, the district court committed reversible error." *Id.* at 866.

(4th Cir. 2010)("Federal law may preempt state law in three ways, denominated as express preemption, field preemption, and conflict preemption.") *with Md. Reclamation Assocs., Inc. v. Harford Cnty.,* 414 Md. 1, 36 (2010)("Under Maryland law, State law may preempt local law in one of three ways: (1) preemption by conflict, (2) express preemption, or (3) implied preemption.")(quoting *Worton Creek Marina, LLC v. Claggett*, 381 Md. 499, 512 (2004)). Moreover, the state laws and regulations at issue here expressly reference and incorporate federal regulations and the Plaintiff has alleged that the combination of federal and state law preempts local law. *See* Md. Code Ann., Pub. Util. § 2-112(a) ("To the full extent that the Constitution and laws of the United States allow, the Commission has jurisdiction over each public service company that engages in or operates a utility business in the State and over motor carrier companies as provided in Title 9 of this article."); Md. Code Regs. 20.55.02.02(A)(3) (2010)("In addition to the regulations found in this chapter, each utility or gas master meter operator shall comply with the following federal regulations, which are incorporated by reference . . . 49 CFR 193, 'Liquefied Natural Gas Facilities: Federal Safety Standards', as amended"). Accordingly, leave to amend the complaint to include state law preemption allegations will not be denied on abstention grounds.

Nor will leave to amend be denied on the basis of futility. The cases cited in both parties' briefs as potentially dispositive of the matter involve regulating the location of overhead electrical power transmission lines. (*See* ECF No. 64, at 13-14)(citing *Deen v. Balt. Gas & Elec. Co.*, 214 A.2d 146 (Md. 1965); *Kahl v. Consol. Gas, Elec. Light & Power Co.*, 60 A.2d 754 (Md. 1948); *Howard Cnty. Md. v. Potomac Elec. Power Co.*, 319 Md. 511 (1990)). Although analogous to this case in some respects, these precedents do not definitively resolve the issue as Defendants suggest. These precedents are of limited value because the Maryland Public Utility Code contains provisions expressly addressing the placement of power lines, Md. Code Ann., Pub. Util. § 7-207[4], as well as a number of other provisions specific to electrical power companies and transmission wires. Md. Code Ann., Pub. Util. §§ 7-201 to 7-212. The Code is not so specific in regard to liquefied natural gas facilities and the ultimate outcome of Plaintiff's state law

---

[4] Md. Code Ann., Pub. Util. § 7-207(b) Certificate of public convenience and necessity required. –(1)(i) Unless a certificate of public convenience and necessity for the construction is first obtained from the Commission, a person may not begin constructions in the State of a generating station. Section b(3) requires that parties obtain a certificate of public convenience and necessity for construction of overhead transmission lines designed to carry an excess of 69,000 volts. This provision was at issue in Howard and said to preempt local zoning requirements.

preemption argument is not so obvious as to render the claim futile.

### 3. Allegations Asserting that PSA Regulation of Intrastate Pipelines' Safety Preempts Local Zoning Laws

Defendants also argue that the allegations asserting that the PSA's regulation of intrastate pipeline safety preempts local laws should not be permitted because these allegations were abandoned and they are futile. As with the state law preemption claims, Defendants' waiver or abandonment argument is not persuasive. The futility argument requires additional analysis.

Defendants contend that these allegations are futile because the PSA does not preclude local zoning laws. Defendants argue that the PSA's express preemption provision applies only to interstate facilities. (ECF No. 85, at 17). Defendants further argue that field and conflict preemption are not applicable.

Field preemption can be inferred "when the pervasiveness of federal regulation precludes supplementation by the States, where the federal interest in the field is sufficiently dominant, or where 'the object sought to be obtained by the federal law and the character of obligations imposed by it . . . reveal the same purpose.'" *Schneidewind v. ANR Pipeline Co.*, 485 U.S. 293, 300 (1988)(quoting *Rice v. Santa Fe Elevator*

*Corp.*, 331 U.S. 218, 230 (1947). The key factor in assessing field preemption is Congressional intent. *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996).

Defendants argue that the purpose of the PSA is limited to regulating aspects of pipeline safety, (ECF No. 65, at 17-18)(citing 49 U.S.C. § 60102(a) and *Tex. Midstream Gas Servs., LLC, v. City of Grand Prairie*, No. 08-CV-1724-D, 2008 U.S. Dist. LEXIS 95991 [2008 WL 5000038] at *23 (N.D.Tex. Nov. 25, 2008)), and argues that the PSA "expressly circumscribes the domain of pipeline safety by withholding from the Secretary of Transportation authority 'to prescribe the location or routing of a pipeline facility'". (ECF No. 65, at 18)(citing 49 U.S.C. § 60104(e)). Defendants contend that siting and location decisions for pipeline facilities fall outside the safety umbrella and thus outside the field in which the PSA would have preemptive effect. Defendants also reference § 60127 of the PSA, pertaining to population encroachment and rights-of-way, which directs the Secretary of Transportation to conduct a study relating to pipeline rights-of-way and their maintenance. *Id.* § 60127(a). As part of this study the Secretary is ordered to consider the "legal authority of Federal agencies and State and local governments to control land use and the limitations of such authority", *id.* § 60127(c), and to "encourage Federal agencies and State and local governments to adopt and implement

appropriate practices, laws, and ordinances . . . to address the risks and hazards associated with encroachment." *Id.* § 60127(d)(3). Defendants argue that this provision evidences Congress' recognition that the Secretary of Transportation could not displace local zoning regulations, but instead the PSA was meant to operate alongside of local regulations. (ECF No. 65, at 21-22). Defendants detail the contours of the county land use regulations at issue and their non-safety related motivation and purpose. (ECF No. 65, at 22-27). Defendants then cite a number of decisions finding that local zoning laws are not impliedly preempted by federal safety statutes for different fields, such as the Federal Aviation Act. (*Id.* at 26-27).

Plaintiff does not contest Defendants' reading of § 60104(e) to preclude the Secretary of Transportation from choosing the location of pipeline facilities, but it disputes that this renders location decisions outside the scope of safety. (ECF No. 69, at 13). In Plaintiff's view: "the federal and State pipeline safety laws and regulations contemplate and sanction a public utility's ability to choose a site for a pipeline facility in the first instance and then mandate that appropriate federal or State officials determine whether that pipeline facility will be allowed at that site based on safety considerations." (*Id.*). Plaintiff argues that the PSA provisions referenced by Defendant, specifically

§ 60127, are limited in scope to the protection of easements or other rights of way owned by public utilities against encroachment by others and do not speak at all to the question of whether local laws can regulate land owned by public utilities in fee simply. (*Id.* at 14).

At this stage, Plaintiff's claim of implied preemption will be allowed to proceed. While Defendants have identified potential roadblocks to Plaintiff's ultimate success, it would be premature to deny the claim at this stage.

### 4. Allegations Asserting Violation of Dormant Commerce Clause

Plaintiff also seeks to add an entirely new claim alleging that the Prince George's County zoning and permitting laws violate the Dormant Commerce Clause. Defendants oppose and argue that this new claim is unexplained, futile, and fails to satisfy the pleading requirements of Fed.R.Civ.P. 8. (ECF No. 85, at 28).

Under the Commerce Clause, Congress has the power to "regulate Commerce ... among the several States." U.S. Const. art. I, § 8, cl. 3. This clause has an implied requirement-often referred to as the dormant Commerce Clause-that the states not "mandate differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." *Granholm v. Heald*, 544 U.S. 460, 472 (2005)(quotation

marks and citation omitted). To determine whether a law violates the dormant Commerce Clause, a court first asks whether the law discriminates on its face against interstate commerce. *United Haulers Ass'n Inc. v. Oneida-Herkimer Solid Waste Management Auth.*, 550 U.S. 330, 338 (2007). Discriminatory laws are subject to a presumption of invalidity that "can only be overcome by a showing that the State has no other means to advance a legitimate local purpose." *Id.* at 338-39 (citing *Maine v. Taylor*, 447 U.S. 131, 138 (1986)). "Where the statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970); *see also Omega World Travel, Inc. v. Mummagraphics, Inc.*, 469 F.3d 348, 356 (4th Cir. 2006).

Plaintiff does not allege that any local law discriminates on its face against interstate commerce. Plaintiff alleges instead that the local regulations "have unreasonably restrained interstate commerce." (ECF No. 63-1 ¶ 55). Plaintiff does not, however, identify specifically the local regulations it is challenging, identify the burdens they impose, or how they are excessive or clearly outweigh the local interests that the laws are designed to promote. Plaintiff has provided only the legal

22

conclusion that the regulations unreasonably restrain interstate commerce. Federal Rule of Civil Procedure 8(a)(2) requires a "'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007). That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)(internal citations omitted). The court need not accept unsupported legal allegations, *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Iqbal*, 129 S.Ct. at 1950, or conclusory factual allegations devoid of any reference to actual events. *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979). Here, Plaintiff has offered only conclusory allegations and not the underlying facts to support its dormant Commerce Clause theory and has not satisfied the pleading requirements of the Federal Rules. Accordingly, Plaintiff's motion for leave to amend will be denied as to count II.

## III. Motion for Summary Judgment

Defendants filed a motion for summary judgment and dismissal of the claims set forth in Plaintiff's SAC in the event that the court denied leave for Plaintiff to file the TAC. (ECF No. 65). Defendants argued that because of the court's

ruling that Plaintiff is an intrastate facility, the claims in the SAC premised on its status as an interstate facility could not succeed as a matter of law. Because the court will allow Plaintiff to file a third amended complaint containing some of the allegations requested by Plaintiff, Defendants' motion for summary judgment premised on the second amended complaint is moot and will be denied.

**IV.  Conclusion**

For the foregoing reasons, Plaintiff's motion for leave to file a third amended complaint will be granted in part and denied in part. Defendants' motion for summary judgment will be denied as moot.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge
