IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

:

WASHINGTON GAS LIGHT COMPANY

:

v.                           :   Civil Action No. DKC 08-0967

:

THE PRINCE GEORGE'S COUNTY
COUNCIL SITTING AS THE DISTRICT :
COUNCIL

:

**MEMORANDUM OPINION**

Presently pending and ready for review are the cross motions for summary judgment submitted by Plaintiff Washington Gas Light Company ("Washington Gas") (ECF No. 79) and Defendants/Counterclaim Plaintiffs Prince George's County, sitting as the District Council, and Prince George's County, Maryland. (ECF No. 82). Also pending are the motion for leave to file an amicus curiae memorandum submitted by Howard County, Maryland (ECF No. 80) and the motion for leave to participate as an amicus curiae and for leave to adopt the amicus curiae memorandum of Howard County submitted by Anne Arundel County, Maryland (ECF No. 81). The issues are fully briefed and the court now rules, no hearing deemed necessary. Local Rule 105.6. For the following reasons, the motion for summary judgment filed by Plaintiff Washington Gas will be denied, the motion for summary judgment filed by Defendants will be granted, the motion

for leave to participate as amicus curiae filed by Howard County, Maryland will be granted, and the motion for leave to adopt Howard County's amicus memorandum filed by Anne Arundel County will be granted.

## I.   Background

The background of this case has been set forth in three prior memorandum opinions.   Only a brief recitation of the undisputed facts will be provided here.

### A.   Factual Background

Washington Gas seeks to add a liquefied natural gas ("LNG") storage tank to its existing natural gas substation located at 2130 Chillum Road, in Prince George's County, Maryland.   The substation is at the intersection of several high-pressure, interstate, natural gas transmission pipelines and several low pressure, local distribution pipelines, all owned and operated by Washington Gas to service its customers in Maryland, the District of Columbia, and Virginia.   The land on which the substation is located is zoned "Open Space."   Washington Gas obtained initial approval for a conventional natural gas storage tank and compressor station from the County Commissioners in 1993.   Subsequently, Washington Gas obtained approval to build a second storage tank, a special zoning exception for a branch headquarters, and a revision to that exception to add to the office and storage spaces.   In 2004, Washington Gas began to

seek approval to build a LNG storage facility at the Chillum substation. Washington Gas first submitted papers to the County to initiate the mandatory referral process. Thereafter, Washington Gas decided that the proper course of action was to proceed through the County's Zoning Hearing Examiner to obtain a "major change" to its existing special exception. Multiple hearings on the major change request took place, and in August 2006 the Examiner issued a decision denying the request, in part because the County had adopted the West Hyattsville Transit District Overlay Zone and accompanying Transit District Development Plan ("TDDP") in the interim. These new plans made the Chillum site part of a proposed Greenway area where public utility uses or structures are prohibited.

Washington Gas appealed the decision to the County Council sitting as the District Council. The District Council ultimately denied the appeal and adopted the findings of the Zoning Hearing Examiner. Washington Gas then appealed that decision to the Circuit Court for Prince George's County. The Circuit Court dismissed the action because Washington Gas had not exhausted its administrative remedies. In the midst of its appeals, Washington Gas had also begun to seek approvals from the Maryland Public Service Commission ("MDPSC") for the LNG storage facility.

**B.    Procedural Background**

Washington Gas filed its initial complaint in this court on April 16, 2008. That complaint sought a declaratory judgment that federal and state law preempt local laws with respect to the siting of LNG facilities, an injunction to prevent Defendants from enforcing the preempted laws, and a declaratory judgment relating to the mandatory referral process. Defendants filed motions to dismiss (ECF Nos. 6, 23), and Washington Gas filed a motion for summary judgment on all counts (ECF No. 12). After a hearing on the issues, the court denied Washington Gas's motion for summary judgment and granted the motion to dismiss in part, ruling that the count relating to the mandatory referral process should be dismissed on abstention grounds. (ECF No. 32).

Washington Gas subsequently filed a second amended complaint and another motion for summary judgment. (ECF Nos. 36, 40). In the second complaint, Washington Gas asserted that it was an interstate facility as defined in the Natural Gas Act. In denying the motion for summary judgment, this court determined to the contrary that Washington Gas is an intrastate facility under the Pipeline Safety Act and not subject to the jurisdiction of the Federal Energy Regulatory Commission ("FERC") under the Natural Gas Act, but instead subject to the exclusive jurisdiction of the state in which its gas is

consumed, in this case Maryland. (ECF No. 60, at 12). Washington Gas subsequently moved for leave to file a third amended complaint, again seeking a declaratory judgment that federal and state law preempt local zoning laws with respect to LNG facilities and an injunction to prevent Defendants from enforcing locals laws, premised on the theory that Washington Gas is an intrastate facility or alternatively an interstate facility. (ECF No. 63). Washington Gas also sought leave to add a count alleging that Defendants had violated the dormant commerce clause. In the memorandum opinion and accompanying order issued on March 22, 2011, Washington Gas was granted leave to file its third amended complaint with respect to count I only regarding preemption of local law. Insofar as this count was premised on the theory that Washington Gas is an interstate facility, Washington Gas was only permitted to reassert its allegations to preserve them for appeal. (ECF Nos. 71, 72).

After Washington Gas filed its third amended complaint, Defendants answered and asserted a counterclaim seeking a declaratory judgment that the County's land use laws are not preempted by the Natural Gas Act, the Pipeline Safety Act, or Maryland public utility law. (ECF No. 74). Following Defendants' answer, the parties filed cross motions for summary judgment. (ECF Nos. 79, 82). In addition, Howard County, Maryland, filed a motion for leave to file an amicus curiae

memorandum (ECF No. 80), and Anne Arundel County, Maryland, filed a motion to participate as amicus curiae and join the memorandum submitted by Howard County.  (ECF No. 81).

## II. Amicus Curiae Motions

Howard County and Anne Arundel County both seek to participate as amicus curiae in this case.  They contend that as chartered counties in the State of Maryland, like Defendant Prince George's County, they have substantial interests "in ensuring the continued applicability of [their] zoning regulations to most public utility facilities, and the important State policy that 'the orderly development and use of land and structures requires comprehensive regulation through implementation of planning and zoning controls' and that such 'controls shall be implemented by local government.'" (ECF No. 80, at 2; ECF No. 81, at 2).  Howard County submitted a separate amicus curiae memorandum and Anne Arundel County simply seeks to join in the arguments made by Howard County. Washington Gas opposes the motions and contends that Anne Arundel County's and Howard County's efforts come too late and will prejudice Washington Gas by delaying a final and full resolution of this case.  (ECF No. 86, at 2).  In addition, Washington Gas argues that the prospective amici bring no additional information to the attention of the court and instead

only duplicate arguments already addressed in Defendants'
submissions. (*Id.*).

There is no Federal Rule of Civil Procedure that applies to
motions for leave to appear as amicus curiae in a federal
district court. District courts therefore have discretion
whether to grant or deny such leave and often look for guidance
to Rule 29 of the Federal Rules of Appellate Procedure, which
applies to amicus briefs at the federal appeals level. *See,
e.g.*, *Jin v. Ministry of State Sec.*, 557 F.Supp.2d 131, 136
(D.D.C. 2008); *Tafas v. Dudas*, 511 F.Supp.2d 652, 660 (E.D.Va.
2007); *Bryant v. Better Bus. Bureau of Greater Md., Inc.*, 923
F.Supp. 720, 728 (D.Md. 1996). Rule 29 indicates that amici
should state "the reason why an amicus brief is desirable and
why the matters asserted are relevant to the disposition of the
case." Fed.R.App.P. 29(b)(2). As noted by Judge Davis in
*Bryant*, "[t]he aid of *amici curiae* has been allowed at the trial
level where they provide helpful analysis of the law, they have
a special interest in the subject matter of the suit, or
existing counsel is in need of assistance." *Bryant*, 923 F.Supp.
at 728 (citing *Waste Mgmt. of Pa., Inc. v. City of York*, 162
F.R.D. 34, 36 (M.D.Pa. 1995); *Strasser v. Doorley*, 432 F.2d 567,
569 (1st Cir. 1970); *United States v. Gotti*, 755 F.Supp. 1157,
1158 (E.D.N.Y. 1991); *News & Sun-Sentinel Co. v. Cox*, 700
F.Supp. 30, 32 (S.D.Fla. 1988)).

Here, the motions filed by Howard County and Anne Arundel County will be granted.  They have both demonstrated a special interest in the outcome of the suit and Howard County's memorandum provides helpful information to the court regarding positions taken by the MDPSC about the preemptive effect of state law on local land use laws.  In addition, Washington Gas's argument regarding delay or prejudice has no merit.  Allowing the counties to participate as amici will not delay the proceedings or the issuance of a final ruling.

**III. Motions for Summary Judgment**

   **A.   Standard of Review**

A court may enter summary judgment only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008).  Summary judgment is inappropriate if any material factual issue "may reasonably be resolved in favor of either party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *JKC Holding Co. LLC v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts

8

showing that there is a genuine issue for trial.'"  *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed.R.Civ.P. 56(e)).  "A mere scintilla of proof . . . will not suffice to prevent summary judgment." *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50.  (citations omitted).  At the same time, the court must construe the facts that are presented in the light most favorable to the party opposing the motion.  *See Scott v. Harris*, 550 U.S. 372, 378 (2007); *Emmett,* 532 F.3d at 297.

### B.  Analysis

The precise legal issue raised in this case is whether Prince George's County's local land use laws are preempted by federal or state laws regulating the natural gas industry and its facilities.  In order to answer this question, it is first necessary to consider the laws applicable to LNG facilities and the ways in which they interconnect and overlap.

### 1.  Overview of Laws Applicable to Natural Gas Facilities

Two federal statutes apply to natural gas facilities and pipelines:  the Natural Gas Act of 1938 ("NGA"), codified at 15 U.S.C. § 717 *et seq.*, and the Natural Gas Pipeline Safety Act of 1968 and subsequent amendments ("PSA"), codified at 49 U.S.C. § 60101 *et seq.*  These statutes will be discussed in turn.

The primary aim of the NGA was to protect consumers against exploitation at the hands of natural gas companies, *Sunray Mid-Continent Oil Co. v. Fed. Power Comm'n*, 364 U.S. 137, 147 (1960), and especially to ensure an adequate supply of natural gas to customers at reasonable and just rates, *see Fla. Power & Light Co. v. Fed. Energy Regulatory Comm'n*, 598 F.2d 370, 379 (5th Cir. 1979); *Clark v. Gulf Oil Corp.*, 570 F.2d 1138, 1145-46 (3[d] Cir. 1977); *Pub. Serv. Comm'n v. Fed. Power Comm'n*, 543 F.2d 757, 792-93 (D.C. Cir. 1974). The NGA primarily imposes rules for the sale and transportation of natural gas in interstate commerce and grants broad regulatory authority to FERC. Yet, the regulatory powers of FERC are not unlimited; section 1(b) of the NGA expressly limits the regulatory role of the Commission and provides that "the States retain jurisdiction over intrastate transportation, local distribution, and distribution facilities, and over 'the production or gathering of natural gas.'" *Nw. Cent. Pipeline Corp. v. State Corp. Comm'n*, 489 U.S. 493, 506 (1989) (quoting 15 U.S.C. § 717(b)). Additionally, § 717(b) gives FERC plenary jurisdiction over only three areas: (1) the transportation of natural gas in interstate commerce; (2) the sale in interstate commerce of natural gas for resale, and (3) natural gas companies engaged in such transportation or sale. *See Cascade Natural Gas Corp. v. Fed. Energy Regulatory*

*Comm'n*, 955 F.2d 1412, 1416 (10th Cir. 1992); *Panhandle E. Pipe Line Co. v. Pub. Serv. Comm'n*, 332 U.S. 507, 516 (1947).

The parties agree that, pursuant to the NGA, federal law preempts any and all local regulations relating to the safety or location of natural gas facilities subject to the jurisdiction of FERC. (*See* ECF No. 83, at 15-17); *see also N. Natural Gas Co. v. Munns*, 254 F.Supp.2d 1103, 1110 (S.D.Iowa 2003), *aff'd*, 377 F.3d 817 (8th Cir. 2004); *Algonquin LNG v. Loqa*, 79 F.Supp.2d 49, 51-52 (D.R.I. 2000); *Nat'l Fuel Gas Supply Corp. v. Pub. Serv. Comm'n*, 894 F.2d 571, 577-79 (2d Cir. 1990). Before constructing an interstate facility, natural gas pipeline companies must apply to and receive a certificate of public convenience and necessity from FERC.

None of these provisions apply, however, to facilities that are not subject to the jurisdiction of FERC, and this court has already determined that Washington Gas is not. Instead Washington Gas is subject to the exclusive jurisdiction of the state in which its gas is consumed. (ECF No. 60 at 11-12 (citing 15 U.S.C. § 717f(f)(2))). Accordingly, neither the specific provisions of the NGA nor its broad goals and objectives apply to the construction or modification of Washington Gas's natural gas facilities in Prince George's County.

The PSA was passed by Congress to recodify, without substantive change, the Natural Gas Pipeline Safety Act of 1968 and the Hazardous Liquids Pipeline Safety Act of 1979. *See* Pub.L.No. 103-272, 108 Stat. 745, pmbl. The PSA's purpose is to "provide adequate protection against risks to life and property posed by pipeline transportation and pipeline facilities" by empowering the Secretary of Transportation to "prescribe minimum safety standards for pipeline transportation and for pipeline facilities." 49 U.S.C. § 60102(a)(1),(2). The PSA generally authorizes the Secretary of Transportation to prescribe and enforce minimum safety standards for deciding on the location of a new liquefied natural gas pipeline facility and in respect of the design, installation, construction, inspection and testing of such facilities. 49 U.S.C. § 60103(a),(b). But the Secretary "may not prescribe or enforce safety standards and practices for an intrastate pipeline facility or intrastate pipeline transportation to the extent that the safety standards and practices are regulated by a State authority . . . that submits to the Secretary annually a certification for the facilities and transportation." *Id.* § 60105(a). Nor may the Secretary prescribe the location or routing of a pipeline facility. *Id.* § 60104(e). The PSA defines an "intrastate gas pipeline facility" as a "gas pipeline facility and transportation of gas within a State not subject to the

12

jurisdiction of the Commission under the Natural Gas Act (15 U.S.C. § 717 *et seq.*)." *Id.* § 60101(a)(9).  Accordingly, as previously held by this court, Washington Gas is an intrastate facility under the PSA.  Additionally, the MDPSC is the state authority that submits annual certifications to the Secretary of Transportation.  Thus, under federal law, the MDPSC has the authority to prescribe and enforce safety standards for Washington Gas, with the caveat that it "may adopt additional or more stringent safety standards for intrastate pipeline facilities and intrastate pipeline transportation only if those standards are compatible with the minimum standards prescribed [in the PSA]." *Id.* § 60104(c).

Also applicable are Maryland's public utilities law, specifically Md. Code Ann., Pub. Utilities § 11-101 *et seq.*, which applies to Liquified Natural Gas Facilities.  Of relevance here are sections 11-202, "Implementation of federal laws; certifications and reports; extent of authority," and 11-203, "Regulatory safety standards and practices; inspections; facility operation and maintenance."  These sections provide that the MDPSC "may act for the United States Secretary of Transportation to implement 49 U.S.C. Chapter 601 with respect to intrastate pipelines located within the State to the extent authorized by certification or agreement with the United States Secretary of Transportation under 49 U.S.C. Chapter 601," *id.* §

11-202(a), "may adopt regulations that establish safety standards and practices applicable to the design, construction, operation, and maintenance of intrastate pipeline facilities," *id.* § 11-203(a)(1), and "[f]or any intrastate pipeline regulatory program that the Commission establishes under this subtitle, the Commission shall adopt as minimum standards the federal safety standards in Title 49, C.F.R. Parts 195 and 199, as periodically amended," *id.* § 11-203(a)(2). The statute also authorizes the MDPSC to conduct inspections of facilities and prescribe mechanisms for enforcement of its safety standards and reporting requirements. Maryland state law thus incorporates federal safety regulations pertaining to liquefied natural gas facilities. Of particular note here is 49 C.F.R. Part 193 subpart B, imposing requirements for the siting of liquefied natural gas facilities relating to thermal radiation protection (49 C.F.R. § 193.2057), flammable vapor-gas dispersion protection (*id.* § 193.2059), and wind forces (*id.* § 193.2067) and requiring facilities to comply with national fire protection standards. Other sections of the regulations also touch on issues relevant to the location of LNG storage facilities, such as 49 C.F.R. § 193.2155(b) which directs that a "LNG storage tank must not be located within a horizontal distance of one mile from the ends, or ¼ mile from the nearest point of a runway." The regulations also set forth requirements for the

14

materials to be used in the liner of a LNG storage tank. *Id.* §
193.2187. Maryland's public utilities law does not expressly
grant the MDPSC authority to make location or siting decisions
for natural gas facilities. Moreover, to the extent the MDPSC
stands in place of the Secretary of Transportation under the
PSA, the Secretary too lacks authority to make siting or
locating decisions for storage facilities.

**2. PSA Preemption of Local Land Use Law**

Washington Gas contends that the PSA preempts County zoning
laws for four reasons:

> (1) federal law impliedly preempts the
> County's zoning laws relating to location
> because federal laws and regulations address
> location requirements for LNG facilities in
> comprehensive detail; (2) federal law
> characterizes the location of an LNG
> facility as a safety standard; (3) the
> structure of federal (and state) law allows
> the utility to choose the location for a
> natural gas facility in the first instance
> and then requires that federal (or certified
> state) authorities approve or disapprove
> that location on safety and other grounds;
> and (4) allowing local zoning law to
> preclude natural gas facilities, despite
> federal or state approvals of the location
> would turn the federal and state mandates to
> establish a uniform system for the
> regulation of natural gas facilities on its
> head and preclude the establishment of a
> national policy to ensure an adequate supply
> of natural gas at reasonable prices.

(ECF No. 79, at 17). Defendants dispute all of these arguments.
Additionally, Defendants argue that some government body must

have authority to determine whether the site selected by a public utility for construction of its LNG storage facility is an incompatible land use and that in this case only the County can and should make that determination.

Pursuant to the Supremacy Clause of the Constitution, federal statutes and regulations, properly enacted and promulgated, preempt state law in three circumstances: "(1) when Congress has clearly expressed an intention to do so ('express preemption'); (2) when Congress has clearly intended, by legislating comprehensively, to occupy an entire field of regulation ('field preemption'); and (3) when a state law conflicts with federal law ('conflict preemption')." *Coll. Loan Corp. v. SLM Corp.*, 396 F.3d 588, 595-96 (4th Cir. 2005) (citing *S. Blasting Servs., Inc. v. Wilkes Cnty., N.C.*, 288 F.3d 584, 590 (4th Cir. 2002)). Field preemption can be inferred "where the pervasiveness of federal regulation precludes supplementation by the States, where the federal interest in the field is sufficiently dominant, or where 'the object sought to be obtained by the federal law and the character of obligations imposed by it . . . reveal the same purpose.'" *Schneidewind v. ANR Pipeline Co.*, 485 U.S. 293, 300 (1988) (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947). The key factor in assessing field preemption is congressional intent. *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996). With respect

16

to conflict preemption, the Fourth Circuit recently reiterated the applicable analysis:

> Assessing a conflict preemption claim requires "a two-step process of first ascertaining the construction of the two statutes and then determining the constitutional question [of] whether they are in conflict." *Chi. & N.W. Transp. Co. v. Kalo Brick & Tile Co.*, 450 U.S. 311, 317, (1981) (internal quotation marks omitted). In making this determination, a court "should not seek out conflicts . . . where none clearly exists." *Coll. Loan Corp.* [*v. SLM Corp.*], 396 F.3d [588,] at 598 [4th Cir. 2005] (internal quotation marks and alteration omitted). Rather, the state statute must clearly "stand[ ] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Chi. & N.W. Transp. Co.*, 450 U.S. at 317. Thus, it is settled that a federal court, before ruling that a federal law preempts a state statute, must determine that the state statute stands as an obstacle to the objectives of the federal law. *See United States v. Onslow Cnty. Bd. of Educ.*, 728 F.2d 628, 635 (4th Cir. 1984).

*H&R Block E. Enters., Inc. v. Raskin*, 591 F.3d 718, 723 (4th Cir. 2010).

The PSA has an express preemption provision, but it is only applicable to interstate gas facilities. *See* 49 U.S.C. § 60104(c) ("A State authority may not adopt or continue in force safety standards for interstate pipeline facilities or interstate pipeline transportation."). Even for interstate facilities, a recent Fifth Circuit opinion determined that local land use regulations with only an incidental effect are not

preempted by the PSA. *See Tex. Midstream Gas Servs. v. City of Grand Prairie*, 608 F.3d 200, 211-12 (5th Cir. 2010) (upholding a city's setback requirement for placement of natural gas compressor station because it was "not a safety standard in letter, purpose, or effect"). Accordingly, express preemption does not apply in this case.

As recognized by Washington Gas, it can only prevail if it establishes that field or conflict preemption applies. Washington Gas's four arguments in favor of such preemption will be addressed in turn.

First, Washington Gas contends that federal laws and regulations address location requirements for LNG facilities in comprehensive detail. In support, Washington Gas points to 49 U.S.C. § 60103(a), authorizing the Secretary of Transportation to set safety standards for deciding on the location of a new LNG facility and to consider, among other things, the existing and proposed land uses near the proposed location when adopting its standards. Defendants argue in response that, notwithstanding Washington Gas's characterization, the PSA and accompanying regulations only address safety requirements in comprehensive detail — location is only briefly mentioned to the extent it impacts safety. Moreover, Defendants argue that the actual process utilized by the MDPSC standing in the shoes of

the Secretary of Transportation belies Washington Gas's position.

Upon close review, it is not accurate to characterize the PSA's treatment of location as comprehensive. To the contrary, the PSA and its accompanying federal and state regulations address location and land use only as one of many factors to consider when adopting safety standards. In its review, the MDPSC limits its analysis to assessing compliance with safety standards pertaining to the thermal radiation exclusion zone and vapor dispersion exclusion zone as set forth in 49 C.F.R. § 193. (*See* ECF No. 83, Ex. AC; ECF No. 51-14, MDPSC Gas Pipeline Safety Inspection and Enforcement Program (2005) (describing its role as "assum[ing] safety responsibility with respect to intrastate gas facilities); ECF No. 73-1, at 8-9).

Second, Washington Gas argues that the PSA considers location a safety standard. This argument is based on a tortured interpretation of § 60104 of the PSA and cannot withstand scrutiny. The PSA recognizes that safety considerations should affect location decisions for LNG facilities and provides that the safety standards established pursuant to the PSA should guide the relevant decision-maker as he makes siting decisions. The PSA does not conflate the two. Moreover, the language of the PSA indicates that some entity other than the Secretary of Transportation (or the MDPSC when it

19

stands in the secretary's place) shall make decisions regarding siting and location of facilities.   When the same statute simultaneously authorizes one entity to set safety standards and does not authorize that entity to make siting decisions, the only logical interpretation is that location is not a safety standard.   It is also noteworthy that for interstate gas facilities, the PSA operates alongside the NGA, and under the NGA, FERC makes siting decisions for interstate LNG facilities. This is further evidence that the PSA does not govern the location of LNG facilities.

Third, Washington Gas argues that the structure of the applicable federal and state laws allows the utility to choose the location for a natural gas facility in the first instance and then requires that federal (or certified state) authorities approve or disapprove that location on safety and other grounds. Defendants do not necessarily disagree on this point, but maintain that the PSA approval is not the only approval that is applicable to an LNG facility and that the PSA's structure does not foreclose the applicability of local land use laws.   For interstate facilities subject to FERC jurisdiction, FERC takes local land use laws into consideration when issuing its certificates for convenience and necessity and often directs utilities to work with state and local governments to obtain other applicable permits.   Where FERC does not have

jurisdiction, it follows that state or local entities apply their own land use laws directly.

Fourth, Washington Gas argues that allowing local zoning law to preclude natural gas facilities where federal or state agencies approved the facility would turn the federal and state mandates to establish a uniform system for the regulation of natural gas facilities on their head and preclude the establishment of a national policy to ensure an adequate supply of natural gas at reasonable prices. Defendants counter that this argument is unavailing because it relies on a district court opinion from Rhode Island involving an interstate facility subject to FERC jurisdiction.

Indeed, Washington Gas's fourth argument is largely inapplicable to natural gas facilities not subject to FERC jurisdiction under the NGA. While the NGA does endeavor to create uniform standards and ensure an adequate supply of natural gas to customers and businesses nationwide, it also exempts local facilities from the broad reach of FERC's regulatory power. In the case upon which Washington Gas relies, *Alqonquin LNG*, the district court expressed concern that subjecting an LNG facility to local zoning laws would be "tantamount to conferring on the [local jurisdiction] the power to review and nullify FERC's decision." 79 F.Supp.2d at 52. This concern is not presented by the facts of this case where

FERC lacks jurisdiction to make decisions regarding the location of the LNG facility.  In exempting certain facilities from FERC jurisdiction, Congress decided that it could ensure a uniform system and a national policy of access to natural gas without complete regulatory authority over local facilities.

Despite Washington Gas's creative arguments, the only plausible way in which Prince George's County's land use laws could be preempted by the PSA is if the land use regulations could be properly classified as safety standards.  The applicable local land use law in this instance is the TDDP for the West Hyattsville Transit District Overlay Zone.  The TDDP's stated intent is "to foster transit-oriented development that increases the use of public transit, maximizes return on investment in transit facilities and services, encourages appropriate development near transit stations with coordinated urban design elements, and increase local tax revenues." (ECF No. 64-1, Exhibit K (TDDP Abstract)).  Further the TDDP has four primary goals:

- Promote TOD [transit oriented development] near the Metro Station and create a sense of place consistent with the neighborhood character areas
- Ensure that all new development or redevelopment in the transit district is pedestrian-oriented
- Restore, protect, and enhance the environment by protecting environmentally sensitive areas, minimizing impacts of development, and

> expanding   recreational   opportunities
> and trail and bikeway connections
> - Maximize   residential   development
>   opportunities  within  walking  distance
>   of the Metro station.

(*Id.* at 4).  Under the TDDP, the land where Washington Gas seeks to construct its LNG storage facility is zoned open space and its preferred use is for parks or greenway space.  Certainly safety considerations play a role in all zoning decisions, but in this case they clearly were not the primary motivator for the County in establishing the TDDP.  In sum, the TDDP is not a safety standard.

There is also no conflict between the TDDP and the PSA. Washington Gas can comply with both statutes simultaneously because adhering to the local land use requirements will not force Washington Gas to place its LNG storage facility in a location deemed unsafe according to the safety standards in place pursuant to the PSA.

### 3. State Law Preemption of Local Land Use Laws

Washington Gas's argument that Maryland state law or Maryland state law in combination with federal law preempts local land use laws rests on the same general principles as its federal law-based argument.  Maryland's Public Utilities Law and accompanying regulations generally give the MDPSC the same authority and jurisdiction that the Secretary of Transportation has under the PSA.  Nevertheless, Washington Gas argues that the

23

state laws applicable to liquid natural gas facilities are so comprehensive as to preempt the field and preclude local governments from applying their land use laws and regulations to LNG facilities.  Because there are no prior cases ruling on the preemptive effect of Maryland's public utilities law relating to LNG utilities, Washington Gas relies on cases discussing the preemptive effect of other state-wide regulatory schemes.  In particular, at various points Washington Gas refers to the decisions of the Court of Appeals of Maryland in *Howard County, Maryland v. Potomac Electric Power Co.*, 319 Md. 511 (1990); *Soaring Vista Properties, Inc. v. Board of County Commissioners of Queen Anne's County*, 356 Md. 660 (1999), and *Allied Vending, Inc. v. City of Bowie, Maryland*, 332 Md. 279 (1993).

Cases ruling on the preemptive scope of state law for other industries or public utilities governed by different provisions of the Maryland code are of only limited applicability.  This is because the preemption analysis is inextricably linked with the specific text and the "primary indicia of a legislative purpose to preempt an entire field of law is the comprehensiveness with which the General Assembly has legislated in the field." *Bd. of Child Care of the Balt. Annual Conference of the Methodist Church, Inc. v. Harker*, 316 Md. 683, 696-97 (1989).  For example, *Howard County* dealt with the preemptive effect of Md. Code Ann., Pub. Utilities § 7-207, which stipulates that no one

24

can begin construction on an electric power generating station or an overhead transmission line that is designed to carry a voltage in excess of 69,000 volts without first obtaining a certificate of public convenience and necessity from the MDPSC.[1] Section 7-207 and accompanying provisions in the Maryland Code of Regulations spell out the application filing requirements and the steps in the administrative process. *See* Md. Code Regs. 20.79.01.01 to .04.04. In holding that local laws addressing the location of such overheard transmission lines were preempted, the Court of Appeals emphasized that section 7-207 "states with particularity that the PSC shall have final authority over the granting of construction permits for overhead transmission lines in excess of 69,000 volts," *Howard Cnty.*, 319 Md. at 524, that the code provision made "no reference to local governing bodies," *id.* at 525, and that former section 54A "focuses considerable attention on site selection of the transmission line, its construction and probable impacts upon selected areas," *id.* at 526. The Court of Appeals also noted, however, that the prescribed review process conducted by the MDPSC afforded local interests an opportunity for active participation in the certification process so that they were not ignored in the process. *Id.* at 528.

---

[1] The opinion refers to the relevant statutory provision by its former designation, Art. 78, § 54A.

In *Soaring Vista Properties*, the issue was whether state law preempted Queen Anne's County zoning ordinances requiring conditional use permits for sewage sludge storage facilities. 356 Md. at 662.   In determining that the zoning ordinance was preempted, the Court of Appeals relied on the comprehensiveness of the state statutory scheme regulating sewage sludge facilities and the fact that state law expressly provided for local government involvement where it was appropriate.   *Id.* at 664-65 (citing Md. Code Ann., Envir. § 9-233, which provided that the Department of the Environment could not issue a permit for a sewage sludge composting facility until the facility "meets all zoning and land use requirements of the county where the sewage sludge composting facility is to be located").[2] Notably, an earlier decision of the Court of the Appeals in *Ad + Soil, Inc. v. County Commissioners of Queen Anne's County*, 307 Md. 307 (1986), had held that local zoning regulations relating to sewage sludge facilities were not preempted because the state regulatory scheme in place at the time was significantly less

---

[2] After the permit at issue in *Soaring Vista Properties* had been issued, § 9-233 was amended to provide that the Department of the Environment had to confirm that sewage sludge storage facilities also complied with all zoning and land use requirements.   *Id.* at 666.

comprehensive than the one in place when *Soaring Vistas* was decided.[3]

---

[3] The comprehensiveness of the state scheme at issue at the time *Soaring Vista Properties* was decided was explained in *Talbot County, Maryland v. Skipper*, 329 Md. 481, 489 (1993):

> The General Assembly, in §§ 9-230 through 9-249 of the Environment Article, has enacted a very comprehensive scheme regulating all aspects of sewage sludge utilization in Maryland. Section 9-230 directs the Department of the Environment to adopt regulations governing utilization of sewage sludge, requires Department of Agriculture approval of certain regulations, and contains numerous subsections detailing the considerations which the Department must address when drafting its regulations. For example, the Department must consider alternative utilization methods, disease control, advertising requirements for public hearings and public informational meetings, performance bonds, insurance and security requirements, notification procedures, and standards for transporting sludge. § 9-230(b). In addition, subsection (c) requires the Department to consider issues such as methods for calculating loading rates, what crops may be grown on the land to which sewage sludge has been applied, nearby surface and ground water, nearby land uses, nearby sensitive areas such as wetlands, appropriate land for application and appropriate composition of sludge to be used, special requirements for tobacco producing land, and buffer areas to separate the land for sludge application from homes or other property. The Department is also directed to promulgate regulations establishing a mechanism for determining annual generator's fees. § 9-230(d). Pursuant to this section, the Department of the Environment has promulgated fifty pages

Finally, in *Allied Vending, Inc.*, the Court of Appeals held that local laws imposing licensing requirements for cigarette vending machines were preempted by a comprehensive state regime governing the appropriate licenses necessary to sell cigarettes in Maryland at wholesale, retail, over-the counter, and through vending machines.   In so holding, the Court of Appeals emphasized that the state laws governing the sale of cigarettes through vending machines

> required[d] a permit, . . . specifie[d] the
> contents of the application, . . .require[d]
> the issuance of the license by the
> Comptroller or clerk of the proper circuit
> court if the application requirements are
> satisfied, . . . authorize[d] the licensee
> to engage in the licensed business, . .
> .establishe[d] provisions for the term and
> renewal of the licenses, . . . establishe[d]
> additional requirements in order to keep the
> license, [and] include[d] the proper
> labeling of the cigarette vending machine
> with an identification label and a warning
> label.

*Id.* at 301.   In short, the Court of Appeals held that "the General Assembly has manifested an intent for the State to completely occupy the field of the sale of cigarettes through vending machines rendering any local or municipal ordinances in this area constitutionally invalid."  *Id.* at 310.

---

> of regulations which thoroughly address all
> of these issues. Md. Code Regs. 26.04.06.01
> *et seq.*

In contrast to the comprehensive regulatory regimes at issue in these three cases, with respect to LNG storage facilities, the Maryland Code and accompanying regulations contain only a few provisions and leave many issues unaddressed. By and large, the provisions of the Code of Maryland Regulations referenced by Washington Gas pertain to aspects of the natural gas industry that have no relation to the siting of LNG storage facilities. (*See* ECF No. 79, at 25 (citing Md. Code Regs. 20.55.01.01 *et seq.*, Md. Code Regs. 20.59.01.01 *et seq.*, Md. Code Regs. 20.56.01.01 *et seq.*, and Md. Code Regs. 20.57.01.01 *et seq.*)). Md. Code Regs. 20.55.01.01 *et seq.* primarily relate to gas companies' service to individual customers and includes requirements for metering, customer relations, and safety issues specific to the delivery of gas to individual customers. Regulation 20.56.01.04 incorporates federal safety regulations, 49 C.F.R. §§ 191 and 192, regarding transportation of natural gas by pipelines. The remainder of this subsection does not address any safety issues relating to the placement of natural gas storage facilities. Regulation 20.57.02.01 provides that the Engineering Division of the MDPSC may conduct periodic inspections of records and property in the possession, custody, or control of a gas company or gas master meter operator to determine compliance with the federal Natural Gas Pipeline Safety Act, 49 U.S.C. § 1671 *et seq.*, as amended, which is

incorporated by reference, or the Public Utilities Article, Annotated Code of Maryland, and it also provides for a system of system of enforcement and penalties for failure to comply. Finally, regulation 20.59.01.01 addresses customer transfers between different gas suppliers. None of the regulatory provisions referenced by Washington Gas have any bearing on the siting or location of LNG storage facilities. In total they sketch the outlines of a regulatory scheme far less comprehensive than those at issue in *Howard County*, *Soaring Vista Properties*, and *Allied Vending, Inc.* and one that does not evidence an intent to overturn the traditional role of local governments in land use decisions.

Likewise, MDPSC's authority to review Washington Gas's Portfolio Plan showing how Washington Gas intends to meet customer demand for the next five years does not include authority to make siting decisions. Nor does the County's ability to participate in the five-year plan review obviate its need separately to review whether the proposed facility will conform to the County's established land use policies. Gas Portfolio reviews are conducted by the MDPSC pursuant to its authority to regulate fuel rates as set forth in Md. Code Ann., Pub. Utilities § 4-402. Their purpose is to ensure that increased costs for customers are verified and justified and that public utilities are positioned to meet future customer

demand.   They are not general reviews of all aspects of public utilities in Maryland and do not include thorough reviews of a public utility's conformity with local land use plans.

On a related note, Washington Gas's contention that local land use law cannot altogether prohibit a facility needed to provide "adequate, economical, efficient gas service to customers" does not dictate the result that Washington Gas seeks.   Defendants have not argued that LNG storage facilities are prohibited everywhere in the County, nor do the applicable local land use regulations bar such facilities in all locations. Defendants simply contend that the storage facility cannot be constructed at the precise location chosen by Washington Gas.

Washington Gas cites *Kahl v. Consolidated Gas, Electric Light & Power Co. of Baltimore*, 191 Md. 249, 262 (1948), for the proposition that "a local zoning law that constitutes a total prohibition against a public utility use will be viewed differently than a local zoning law that allows the use subject to reasonable conditions." (ECF No. 92, at 13 (citing *Kahl*, 191 Md. at 259)).   In that very case, however, the Court of Appeals acknowledged that it would be an appropriate exercise of local police power to forbid the construction of an overhead power line if "it is found upon an examination of the facts that the construction it proposes is in violation of the public welfare or safety." *Kahl*, 191 Md. at 261.   Even the dissent's

admonishment that a refusal on remand to grant the permit would

"transcend the limits of police power" was not intended as a

general pronouncement against denial of permits to public

utilities in all cases, but rather was based on the specific

facts of the case and a particularized determination that the

balance of factors considered by the zoning board left no

question that the proposed use was in the public interest and a

denial would favor only a select few. *Id.* at 266-68. As a

general matter, Washington Gas's position proves too much. If

local zoning regulations could never be applied to deny a permit

to public utilities, as a practical matter there would be no

point in requiring public utilities to apply for zoning permits.

Yet, the cases both parties cite make evident that public

utilities frequent apply for land use permits. *See generally,*

*e.g., Cnty. Council v. Potomac Electric Power Co.*, 263 Md. 159

(1971); *Deen v. Balt. Gas & Electric Co.*, 240 Md. 317 (1965);

*Friends of the Ridge v. Balt. Gas & Electric Co.*, 352 Md. 645

(1999). Indeed, Maryland courts have upheld the application of

location zoning regulations even where doing so precluded a

public utility entirely from using its preferred site. *See*

*generally St. Clair v. Colonial Pipeline Co.*, 235 Md. 578 (1964)

(no discussion of preemption). As pointed out by amici Howard

County and Anne Arundel County, if Washington Gas's argument

were adopted, it would usurp local zoning authority for all

public utilities in the State.  (ECF No. 80-1, at 2).  Even the MDPSC in the past has noted that its power to regulate public utilities does not preempt local zoning laws in all cases.  (*See* ECF No. 80-2, Brief of the Public Service Commission of Maryland in *Howard County, Md. v. Potomac Electric Power Co.* No. 113 (1989), at 32 n.18 (noting that local zoning regulations could be applied to local electricity distribution lines not expressly subject to the MDPSC's certificate authority)).

Additionally, Defendants point out that Washington Gas has admitted in other proceedings that it has alternatives to the proposed Chillum site that will enable it to meet customer demand.  (ECF No. 93 at 9 n.2, n.27 (citing ECF No. 83, Exs. AB, Z; ECF No. 93-2, Exs. AE, at 16, 18; Ex. AF, at 5)).  Accordingly, Defendants maintain that Washington Gas's attempt to characterize the facility as irreplaceable and immoveable is overstated.

**4.  Additional Arguments Raised by Washington Gas**

**a.  Taking**

In a footnote Washington Gas raises the argument that any prohibition on the use of its property at the Chillum site to construct a LNG storage facility may constitute a regulatory taking.  (*See* ECF No. 92, at 16 n.10).  This claim was not alleged in Washington Gas's third amended complaint and has not

been previously raised in the case.   Accordingly the court will not consider it now.

      **b.   Mandatory Referral**

      Washington Gas also resurrects its previously dismissed argument regarding the mandatory referral process.   Washington Gas first attempted to invoke the mandatory referral process in count II of its initial complaint.   The count was dismissed in the court's order of February 10, 2009, because Washington Gas had failed to state a claim, and any claim that could arise regarding the mandatory review process warranted Burford abstention.   (ECF No. at 13-21).   Washington Gas did not move for reconsideration of that prior decision, nor has it alleged any claims regarding the mandatory referral process in subsequent iterations of its complaint.   Moreover, the only claim presently before the court is whether federal or state law preempts local zoning regulations.   Whether Defendants are obligated to utilize the mandatory referral process is a separate issue not properly before this court.

**IV. Conclusion**

      For the foregoing reasons, the motion for summary judgment filed by Plaintiff Washington Gas will be denied, the motion for summary judgment filed by Defendants will be granted, the motion for leave to participate as an amicus curiae filed by Howard County, Maryland, will be granted, and the motion for leave to

34

adopt Howard County's amicus memorandum filed by Anne Arundel County will be granted.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge